**OUTTEN & GOLDEN LLP**
Justin M. Swartz (JS 7989)
Linda A. Neilan (LN 4095)
Rachel M. Bien (RB 6919)
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: (212) 245-1000

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **MICHAEL McMAHON and RUSLAN RUDENOK**, on behalf of themselves and all others similarly situated,<br><br>                    **Plaintiffs,**<br><br>          **-against-**<br><br>**OLIVIER CHENG CATERING AND EVENTS, LLC, OLIVIER CHENG, and FRANCK CURSAT,**<br><br>                    **Defendants.** | **08 Civ. 8713 (PGG)** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT, CONDITIONAL CERTIFICATION OF THE SETTLEMENT CLASS, APPOINTMENT OF PLAINTIFFS' COUNSEL AS CLASS COUNSEL, AND APPROVAL OF PLAINTIFFS' PROPOSED NOTICE OF SETTLEMENT AND CLASS ACTION SETTLEMENT PROCEDURE**

**<u>TABLE OF CONTENTS</u>**

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES .......................................................................................... iii

INTRODUCTION ............................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND......................................................1

    I.    Procedural History ................................................................................................1

    II.   Discovery ..............................................................................................................2

    III.  Plaintiffs' Factual Allegations .............................................................................2

    IV.  Settlement Negotiations .......................................................................................2

SUMMARY OF THE SETTLEMENT TERMS ..............................................................3

    I.    The Settlement Fund ............................................................................................3

    II.   Releases.................................................................................................................3

    III.  Eligible Employees ..............................................................................................3

    IV.  Allocation Formula ..............................................................................................4

    V.   Attorneys' Fees and Litigation Costs...................................................................4

    VI.  Service Awards ....................................................................................................4

    VII. Settlement Claims Administrator.........................................................................5

    VIII. Injunctive Relief...................................................................................................5

CLASS ACTION SETTLEMENT PROCEDURE ...........................................................5

ARGUMENT.....................................................................................................................7

    I.    Preliminary Approval of the Settlement Is Appropriate ....................................7

          A.   The Settlement is Fair, Reasonable, and Adequate................................9

               1.    Litigation Through Trial Would be Complex, Costly, and Long (*Grinnell* Factor 1) ........................................................................9

2.    The Reaction of the Class Has Been Positive (*Grinnell* Factor 2) ...............10

3.    Discovery Has Advanced Far Enough to Allow the Parties to Responsibly Resolve the Case (*Grinnell* Factor 3).......................................10

4.    Plaintiffs Would Face Real Risks if the Case Proceeded (*Grinnell* Factor 4 and 5) .................................................................11

5.    Establishing a Class and Maintaining it Through Trial Would Not Be Simple (*Grinnell* Factor 6) ............................................11

6.    Defendants' Ability to Withstand a Greater Judgment is Not Clear (*Grinnell* Factor 7) ..............................................12

7.    The Settlement Fund is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factor 8 and 9) ............................................13

II.    Conditional Certification of the Rule 23 Class Is Appropriate........................................14

A.    Numerosity.............................................................................16

B.    Commonality...........................................................................16

C.    Typicality ...............................................................................17

D.    Adequacy of the Named Plaintiffs...................................................18

E.    Certification is Proper Under Rule 23(b)(3) .........................................18

1.    Common Questions Predominate ...............................................19

2.    A Class Action is a Superior Mechanism ...................................20

III.    Plaintiffs' Counsel Should Be Appointed as Class Counsel...........................................21

IV.    The Proposed Class Notice is Appropriate ....................................................22

A.    The Proposed Class Notice Satisfies Due Process....................................22

B.    The Notice Plan and Award Distribution Process Are Appropriate .....................23

V.    Plaintiffs Will Seek Approval of the FLSA Settlement...................................................23

CONCLUSION.............................................................................................24

**FEDERAL CASES**

*Amchem Prod., Inc. v. Windsor*,
    521 U.S. 591 (1997)................................................................................ 14, 18-20

*Ansoumana v. Gristede's Operating Corp.*,
    201 F.R.D. 81 (S.D.N.Y. 2001) .......................................................................22

*In re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000)............................................................. passim

*In re BankAmerica Corp. Sec. Litig.*,
    210 F.R.D. 694 (E.D. Mo. 2002) ......................................................................8

*Brooks v. Am. Export Indus., Inc.*,
    No. 71-CV-5128, 1977 U.S. Dist. LEXIS 17313 (S.D.N.Y. Feb. 17, 1977)..........................13

*Brown v. Title Ticor Ins. Co.*,
    982 F.2d 386 (9th Cir. 1992) ..........................................................................19

*Cagan v. Anchor Sav. Bank FSB*,
    No. 88-CV-3024, 1990 U.S. Dist. LEXIS 11450 (E.D.N.Y. May 22, 1990) ...................13, 14

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974)..........................................................................9, 13

*Consol. Rail Corp. v. Town of Hyde Park*,
    47 F.3d 473 (2d Cir. 1995)..............................................................................16

*County of Suffolk v. Long Island Lighting Co.*,
    710 F. Supp. 1422 (E.D.N.Y. 1989) ..................................................................15

*D'Amato v. Deutsche Bank*
    236 F.3d 78 (2d Cir. 2001)..............................................................................9

*Damassia v. Duane Reade, Inc.*,
    Nos. 04-CV-8819, 06-CV-2295, 250 F.R.D. 152 (S.D.N.Y. 2008) ...............................17, 22

*Denney v. Deutsche Bank AG*,
    443 F.3d 253 (2d Cir. 2006)............................................................................18

*Dziennik v. Sealift, Inc.*,
    No. 05-CV-4659, 2007 U.S. Dist. LEXIS 38701 (E.D.N.Y. May 29, 2007) ........................18

*In re EVCI Career Coll. Holding Corp. Sec. Litig.*,
No. 05-CV-10240, 2007 U.S. Dist. LEXIS 57918 (S.D.N.Y. July 27, 2007) ..........................8

*Frank v. Eastman Kodak Co.*,
228 F.R.D. 174 (W.D.N.Y. 2005).................................................................... passim

*In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prod. Liab. Litig.*,
55 F.3d 768 (3rd Cir. 1995) ..........................................................................14, 15

*Gen. Tel. Co. of Sw. v. Falcon*,
457 U.S. 147 (1982)..........................................................................................16

*Gilliam v. Addicts Rehab. Ctr. Fund*,
No. 05-CV-3452, 2008 U.S. Dist. LEXIS 23016 (S.D.N.Y. Mar. 24, 2008) ......................4, 22

*Green v. Wolf Corp.*,
406 F.2d 291 (2d Cir. 1968)..............................................................................20

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1988) ..........................................................7, 14, 16, 21

*Iglesias-Mendoza v. La Belle Farm, Inc.*,
239 F.R.D. 363 (S.D.N.Y. 2007) ........................................................................19

*Joel A. v. Giuliani*,
218 F.3d 132 (2d Cir. 2000)..............................................................................14

*Kamean v. Local 363, Int'l Bhd. of Teamsters*,
109 F.R.D. 391 (S.D.N.Y. 1986) ........................................................................16

*Lenahan v. Sears, Roebuck & Co.*,
No. 02-CV-0045, 2006 U.S. Dist. LEXIS 60307 (D. N.J. July 10, 2006)................15, 17, 20

*Lynn's Food Stores, Inc. v. United States*,
679 F.2d 1350 (11th Cir. 1982) ..........................................................................8

*Marcus v Kan. Dep't of Revenue*,
209 F. Supp. 2d 1179 (D. Kan. 2002)....................................................................8

*Marisol A. v. Giuliani*,
126 F.3d 372 (2d Cir. 1997)..............................................................................17

*Martens v. Smith Barney Inc.*,
181 F.R.D. 243 (S.D.N.Y. 1998) ........................................................................18

*Maywalt v. Parker & Parsley Petroleum Co.*,

67 F.3d 1072 (2d Cir. 1998)............................................................................7

*McBean v. City of New York*,
   228 F.R.D. 487 (S.D.N.Y. 2005) ..............................................................19

*McKenna v. Champion Int'l Corp.*,
   747 F.2d 1211 (8th Cir. 1984) ..................................................................24

*In re Michael Milken & Assocs. Sec. Litig.*,
   150 F.R.D. 57 (S.D.N.Y. 1993) ................................................................23

*Milonas v. Williams,*
   691 F. 2d 931 (10th Cir. 1982) .................................................................17

*Newman v. Stein,*
   464 F.2d 689 (2d Cir. 1972)......................................................................14

*Officers for Justice v. Civil Serv. Comm'n,*
   688 F.2d 615 (9th Cir. 1982) ....................................................................13

*Ortiz v. Fibreboard Corp.*,
   527 U.S. 815 (1999)..................................................................................18

*Port Auth. Police Benev. Ass'n, Inc. v. Port Auth. of N.Y. & N.J.*,
   698 F.2d 150 (2d Cir. 1983) .....................................................................16

*Robidoux v. Celani,*
   987 F.2d 931 (2d Cir. 1993)................................................................16, 17

*Rossini v. Ogilvy & Mather, Inc.*,
   798 F.2d 590 (2d Cir. 1986)......................................................................18

*Savino v. Computer Credit, Inc.*,
   173 F.R.D. 346 (E.D.N.Y. 1997) ..............................................................16

*Stefaniak v. HSBC Bank USA, N.A.*,
   No. 05-CV-0720, 2008 U.S. Dist. LEXIS 53872 (W.D.N.Y. June 28, 2008)....................4, 22

*In re Traffic Executive Ass'n,*
   627 F.2d 631 (2d Cir. 1980)........................................................................7

*Trief v. Dun & Bradstreet Corp.*,
   144 F.R.D. 193 (S.D.N.Y. 1992) ..............................................................16

*Trinidad v. Breakaway Courier Sys., Inc.*,
   No. 05-CV-4116, 2007 U.S. Dist. LEXIS 2914 (S.D.N.Y. Jan. 12, 2007) ............................17

*Torres v. Gristede's Operating Corp.*,
No. 04-CV-3316, 2006 U.S. Dist. LEXIS 74039 (S.D.N.Y Sept. 29, 2006)...............19, 20, 22

*Toure v. Cent. Parking Sys.*,
No. 05-CV-5237, 2007 U.S. Dist. LEXIS 74056 (S.D.N.Y. Sept. 28, 2007).........................18

*In re Visa Check/MasterMoney Antitrust Litigation*,
280 F.3d 124 (2d Cir. 2001)........................................................................................19, 20

*Wagner v. NutraSweet Co.*,
95 F.3d 527 (7th Cir. 1996) .................................................................................................17

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
396 F.3d 96 (2d Cir. 2005)................................................................................................7, 8

*In re Warfarin Sodium Antitrust Litigation*,
391 F.3d 516 (3d Cir. 2004)...........................................................................................7, 10

*Wright v. Stern*,
553 F. Supp. 2d 337 (S.D.N.Y. 2008)...................................................................................8

## FEDERAL STATUTES

29 U.S.C. § 216 (b) ..................................................................................................................1

## FEDERAL RULES

Fed. R. Civ. P. 23 ...............................................................................................1, 14, 22, 24

Fed. R. Civ. P. 23(a) .................................................................................................14,1 5,18

Fed. R. Civ. P. 23(a)(1)........................................................................................................16

Fed. R. Civ. P. 23(a)(3).........................................................................................................17

Fed. R. Civ. P. 23(a)(4).........................................................................................................18

Fed. R. Civ. P. 23(b) .....................................................................................................14,15

Fed. R. Civ. P. 23(b)(3)................................................................................................. passim

Fed. R. Civ. P. 23(c)(2)(B) ...............................................................................................22, 23

Fed. R. Civ. P. 23(c)(2)(3) ...................................................................................................23

Fed. R. Civ. P. 23(c) (3) .................................................................................................23

Fed. R. Civ. P. 23(e) .....................................................................................................6

Fed. R. Civ. P. 23(f) ....................................................................................................12

Fed. R. Civ. P. 23(g) ...............................................................................................21, 22

Fed. R. Civ. P. 23(g)(1)(C)(i) .....................................................................................21

Fed. R. Civ. P. 23(g)(1)(C)(ii) ....................................................................................21

**TREATISES**

Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, §§ 11.22, *et seq.* (4th ed. 2002) ........................................................................................................... passim

## INTRODUCTION

Subject to Court approval, the parties have settled Plaintiffs' and class members' claims for $400,000 plus interest and injunctive relief. The proposed settlement resolves all of Plaintiffs' and class members' claims. It also satisfies all of the criteria for preliminary approval under federal law. Accordingly, Plaintiffs respectfully request that the Court (1) grant preliminary approval of the Joint Settlement and Release Agreement ("Settlement Agreement") attached as Exhibit C to the Declaration of Linda A. Neilan in Support of Plaintiffs' Motion for Preliminary Approval of Settlement ("Neilan Dec.");[1] (2) provisionally certify the settlement class under Fed. R. Civ. P. 23(b)(3) in connection with the settlement process; (3) appoint Outten & Golden LLP as Class Counsel ("Class Counsel"); and (4) approve the Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing ("Proposed Notice") attached as Exhibit A to the Proposed Order and direct its distribution.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. Procedural History

The Plaintiffs are former and current servers, waiters, bussers, bartenders, captains, and front-end sanitation workers who work or worked for Olivier Cheng Catering and Events LLC ("OCC"), an upscale catering company owned and/or operated by Olivier Cheng and Franck Cursat (collectively, with OCC, "Defendants").

On October 10, 2008, Plaintiffs commenced this action as a putative class action under Fed. R. Civ. P. 23 and as a collective action under 29 U.S.C. § 216(b), bringing claims under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). (Neilan Dec. ¶ 14.)

---

[1] Unless otherwise indicated, all exhibits are attached to the Declaration of Linda A. Neilan.

## II.    Discovery

The parties engaged in substantial informal discovery before agreeing to resolve this case.  Plaintiffs' counsel interviewed workers regarding their hours worked and Defendants' policies and procedures for compensating overtime work and work performed at catered events, including whether workers earned tips.  (Neilan Dec. ¶ 15.)

In addition, Plaintiffs obtained, reviewed, and analyzed hard-copy documents and electronic data including, but not limited to, Defendants' payroll records, invoices, and OCC event contracts.  (Neilan Dec. ¶ 16.)

## III.    Plaintiffs' Factual Allegations

Plaintiffs allege that Defendants (1) violated the NYLL by misappropriating mandatory gratuities or "service charges" that Defendants charged their customers who held events and which these customers reasonably believed were meant for the service staff; and (2) violated the FLSA and the NYLL by failing to pay a full overtime premium for the hours that they worked over 40 in a workweek.   (Ex. B (Compl.).)

## IV.    Settlement Negotiations

The parties agreed to participate in private, non-binding mediation in order to resolve this case.  They hired Carol Wittenberg ("Ms. Wittenberg") of JAMS, an experienced mediator in employment law.  The parties attended two mediation sessions, on January 27, 2009 and February 11, 2009, through which they reached a settlement.  (Neilan Dec. ¶ 18.)   On March 27, 2009, the parties executed the Settlement Agreement.  (Ex. C (Stlmt. Agmt.).)

## SUMMARY OF THE SETTLEMENT TERMS

### I.  The Settlement Fund

The Settlement Agreement creates a fund of $400,000 to settle this case ("the Fund"). The Fund covers attorneys' fees and costs, class members' awards, interest, and service payments.  (Ex. C (Stlmt. Agmt.) ¶ 3.1(A).)  None of the Fund reverts to Defendants and payroll taxes shall not come from the Fund.  (*Id.* ¶¶ 3.1(C), 3.5(C).)

### II.  Releases

The Settlement Agreement provides that every class member who does not timely opt out of the settlement will release his or her NYLL wage and hour claim.  (*Id.* ¶¶ 2.4, 4.1(A).)  Class members will release FLSA claims by endorsing their settlement checks.  (*Id.* ¶¶ 2.5, 4.1(B).)

### III.  Eligible Employees

There are two partially overlapping categories of workers entitled to receive payments from the Fund, the "FLSA Class" and the "Rule 23 Class."  The FLSA Class consists of individuals who work or worked for Defendants as servers, waiters, bussers, bartenders, captains, and front-end sanitation workers who have submitted written "consents to join" indicating their desire to join the FLSA component of the case or who execute an FLSA release by endorsing their settlement checks.  (Ex. C (Stlmt. Agmt.) ¶ 2.5.)  The Rule 23 Class consists of servers, waiters, bussers, bartenders, captains, and front-end sanitation workers who worked for Defendants within the six-year NYLL statute of limitations period and who do not opt-out pursuant to the terms of the Settlement Agreement.  (*Id.* ¶ 2.4.)

## IV. Allocation Formula

According to the Settlement Agreement, the FLSA class members and the Rule 23 class members who do not opt out of the settlement will be paid pursuant to an allocation formula based on (1) the number of overtime hours they worked; and (2) the number of catered events they worked for which Defendants charged their customers and retained a mandatory service charge. (Ex. C (Stlmt. Agmt.) ¶ 3.4(B).) The net settlement payment will be allocated as follows: 17.5% will be allocated to the overtime claims and 82.5% will be allocated to the service charge claims. Settlement awards will be allocated 50% to wages and 50% to interest and liquidated damages. (*Id.* ¶ 3.5(A).) Defendants are responsible for state and federal payroll taxes. (*Id.* ¶ 3.5(C).)

## V. Attorneys' Fees and Litigation Costs

Consistent with the Settlement Agreement, Plaintiffs' counsel will apply for 33 1/3% of the Fund as attorneys' fees.[2] (*Id.* ¶ 3.2(A).) Plaintiffs' counsel will also seek reimbursement for their actual out of pocket litigation costs and expenses from the Fund, which "shall not exceed $15,000." (*Id.* ¶ 3.2(A).) The Court need not rule on fees and costs now. Plaintiffs' counsel will file a formal motion for approval of fees and costs along with their motion for final approval of the settlement. *See* Fed. R. Civ. P. 23(h) and 54(d)(2).

## VI. Service Awards

Under the Settlement Agreement, in addition to their individualized awards under the allocation formula, and subject to Court approval, Michael McMahon and Ruslan Rudenok will

---

[2]     This is a typical fee award in the Second Circuit. *Stefaniak v. HSBC Bank USA, N.A.*, No. 05-CV-720, 2008 U.S. Dist. LEXIS 53872, at *10 (W.D.N.Y. June 28, 2008) (a fee award of "33% of the Settlement Fund is typical in class action settlements in the Second Circuit"); *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2008 U.S. Dist. LEXIS 23016, at *15 (S.D.N.Y. Mar. 24, 2008) ("counsel is entitled to one-third of the common fund after deduction of legal costs, which is consistent with the norms of class litigation in this circuit").

each receive an additional payment of $5,000 in recognition of the services they rendered on behalf of the class ("Service Awards"). (*Id.* ¶ 3.3.) Plaintiffs will move for Court approval of the Service Awards simultaneously with Plaintiffs' Motion for Final Approval of the Settlement.

## VII.  Settlement Claims Administrator

Under the Settlement Agreement, Settlement Services, Inc. of Tallahassee, Florida will serve as the Claims Administrator ("Claims Administrator"). (*Id.* ¶ 2.1.) The Claims Administrator's fees will be paid by Defendants. (*Id.* ¶ 2.1.)

## VIII.  Injunctive Relief

The Parties agreed that, subject to Court approval, the following injunctive relief will remain in effect for one year from the date of the execution of the Settlement Agreement:

1.  Defendants agree to comply with the New York Labor Law and the Fair Labor Standards Act;

2.  Defendants agree to pay overtime compensation at the rate of time and one-half to employees who work more than 40 hours in a workweek; and

3.  Defendants will not retaliate against any workers for their participation in this Litigation and/or Settlement.

(*Id.* ¶ 3.6(A).)

## CLASS ACTION SETTLEMENT PROCEDURE

Judicial proceedings have established a defined procedure and specific criteria for settlement approval in class action settlements, which includes three distinct steps:

1.  Preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval and certification of settlement classes;

2.  Dissemination of mailed and/or published notice of settlement to all affected Class members; and

3.  A final settlement approval hearing at which class members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*See* Fed. R. Civ. P. 23(e); *see also* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("*Newberg*"), §§ 11.22, *et seq.* (4th ed. 2002). This process safeguards class members' procedural due process rights and enables the court to fulfill its role as the guardian of class interests.

With this motion, Plaintiffs request that the Court take the first step – granting preliminary approval of the Settlement Agreement, provisionally certifying the settlement class, and approving Plaintiffs' Proposed Notice and authorizing them to send it. Two other courts in the Southern District recently granted preliminary approval of a settlement similar to this one. (Neilan Dec. Ex. A (*Reyes v. Buddha-Bar NYC*, 08 Civ. 2494 (S.D.N.Y. Jan. 29, 2009); *Mohney v. Shelly's Prime Steak Stone Crab & Oyster Bar*, 06 Civ. 4270 (S.D.N.Y. Dec. 16, 2008).)

The parties respectfully submit the following proposed schedule for final resolution of this matter for the Court's consideration and approval:

1.    The Proposed Notice will be mailed to class members within 15 days after the Order Granting Preliminary Approval.

2.    Class members will have 30 days after the date the Proposed Notice is mailed to opt out of the settlement or object to it ("Notice Period").

3.    Plaintiffs will file a Motion for Final Approval of Settlement within 15 days of the fairness hearing.

4.    A final fairness hearing will be held as soon as is convenient for the Court.

5.    After the final fairness hearing, if the Court grants Plaintiffs' Motion for Final Approval of the Settlement, the Court will issue a Final Order and Judgment. If no party appeals the Court's Final Order and Judgment, the effective date of the settlement will be 30 days after the Court enters its Final Order and Judgment ("Effective Date").

6.    If a party appeals the Court's Final Order and Judgment, the Effective Date of Settlement shall be the day after all appeals are finally resolved.

7.    The Claims Administrator will disburse the payment of settlement funds to the class members, Class Counsel's attorneys' fees and expenses, the Claims

Administrator's fee, and the Plaintiffs' Service Awards within 5 days after the Effective Date.

## ARGUMENT

### I.    Preliminary Approval of the Settlement Is Appropriate

The law favors compromise and settlement of class action suits.  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (internal quotations omitted); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("there is an overriding public interest in settling class action litigation, and it should therefore be encouraged"); *see also Newberg on Class Actions* § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").

The approval of a proposed class action settlement is a matter of discretion for the trial court.  *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1998).  In exercising this discretion, courts should give "proper deference to the private consensual decision of the parties."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1988).

Preliminary approval, which is what Plaintiffs seek here, requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties.  *Newberg* § 11.25.  To grant preliminary approval, the court need only find that there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness."  *In re Traffic Executive Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980); *Newberg* § 11.25 ("If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness . . . and appears to fall within the range of possible approval," the court should permit notice of the settlement to be sent to class members).

"Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005). "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (internal quotations omitted); *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1354 (11th Cir. 1982) (recognizing that courts rely on the adversary nature of a litigated FLSA case resulting in settlement as indicia of fairness); *Wright v. Stern*, 553 F. Supp. 2d 337, 343 (S.D.N.Y. 2008) (same); *Marcus v. Kan. Dep't of Revenue*, 209 F. Supp. 2d 1179, 1182 (D. Kan. 2002) ("When a settlement is reached by experienced counsel after negotiations in an adversarial setting, there is an initial presumption that the settlement is fair and reasonable.").

If the settlement was achieved through arm's-length negotiations by experienced counsel, "[a]bsent fraud or collusion," "[courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 U.S. Dist. LEXIS 57918, *12 (S.D.N.Y. July 27, 2007); *In re BankAmerica Corp. Securities Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002) ("In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations . . .") (internal quotations omitted).

This first step in the settlement process simply allows notice to issue to the class and for class members to object or opt-out of the settlement. After the notice period, the Court will be able to evaluate the settlement with the benefit of the class members' input.

## A.  The Settlement is Fair, Reasonable, and Adequate

In evaluating a class action settlement, courts in the Second Circuit consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).  Although the Court's task on this motion is merely to perform an "initial evaluation," *Newberg* § 11.25, it is useful for the Court to consider the criteria on which it will ultimately judge the settlement.

The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages;  (6) the risks of maintaining the class action through the trial;  (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  495 F.2d at 463.  All of the *Grinnell* factors weigh in favor of approval of the Settlement Agreement, and certainly in favor of preliminary approval.

### 1.  Litigation Through Trial Would be Complex, Costly, and Long (*Grinnell* Factor 1)

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiffs seek to avoid significant expense and delay, and instead ensure recovery for the class.  "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them."  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).  This case is no exception, with approximately 340 putative class members and claims under federal and state law.

Although there has been some discovery, (Neilan Dec. ¶¶ 15-16), additional discovery would be required to establish liability and damages. A complicated trial would be necessary, featuring extensive testimony by Defendants, Plaintiffs, class members, and experts. Preparing and putting on evidence on the complex factual and legal issues at such a trial would consume tremendous amounts of time and resources and demand substantial judicial resources. A trial on damages, even on a representative basis, would be costly and would further defer closure. Any judgment would likely be appealed, thereby extending the duration of the litigation. This settlement, on the other hand, makes monetary relief available to class members in a prompt and efficient manner. Therefore, the first *Grinnell* factor weighs in favor of preliminary approval.

### 2. The Reaction of the Class Has Been Positive (*Grinnell* Factor 2)

Although notice of the settlement has not yet issued to the class, word of it has spread. The Named Plaintiffs, both of whom participated in the mediation process, have reacted positively to the settlement. Although the Court should more fully analyze this factor after notice issues, it weights in favor of preliminary approval.

### 3. Discovery Has Advanced Far Enough to Allow the Parties to Responsibly Resolve the Case (*Grinnell* Factor 3)

The parties have completed enough informal discovery to recommend settlement. The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *Warfarin*, 391 F.3d at 537. "The pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian*, 80 F. Supp. 2d at 176 (internal quotations omitted). The parties' discovery here meets this standard. As outlined

in Part I, *supra*, Plaintiffs obtained substantial document discovery from Defendants, including payroll data, invoices, and event contracts.  This factor weighs in favor of preliminary approval.

### 4.      Plaintiffs Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5)

Although Plaintiffs' case is strong, it is not without risk.  In weighing the risks of establishing liability and damages, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement."  *Id.* at 177 (internal quotations omitted).  A trial on the merits would involve significant risk because of the fact-intensive nature of proving Plaintiffs' NYLL claims in particular, and in light of the defenses available to Defendants, which would pose substantial risk as to both liability and damages.

Although Defendants would likely not contest liability for Plaintiffs' FLSA claims, Plaintiffs face serious challenges with respect to their NYLL claim that Defendants misappropriated mandatory gratuities or "service charges."  In particular, Plaintiffs may have difficulty showing that Defendants' customers believed that the mandatory service charges they paid to Defendants were meant for the servers.

While Plaintiffs believe that they could ultimately establish Defendants' liability on the NYLL claims, this would require significant factual development and a favorable outcome of the trial and the inevitable appeals process, which are inherently uncertain in outcome and duration.  The proposed settlement alleviates this uncertainty.  This factor weighs in favor of preliminary approval.

### 5.      Establishing a Class and Maintaining it Through Trial Would Not Be Simple (*Grinnell* Factor 6)

The risk of maintaining the class status through trial is also present.  The Court has not yet certified the state law class and the parties anticipate that such a determination would be

reached only after exhaustive briefing by both parties.  Defendants would likely argue that individual questions, including with respect to whether customers believed the service charge was a gratuity for the servers, preclude class certification.  They would also likely argue that a class action is not a superior method to resolve Plaintiffs' claims and that a class trial would not be manageable.

Should the Court certify the class, Defendants would later challenge certification and move to decertify, forcing another round of briefing.  They may also seek permission to file an interlocutory appeal under Fed. R. Civ. P. 23(f).  Risk, expense, and delay permeate such a process.  Settlement eliminates this risk, expense, and delay.  This factor favors preliminary approval.

## 6. Defendants' Ability to Withstand a Greater Judgment is Not Clear (*Grinnell* Factor 7)

Defendants' ability to withstand a greater judgment is in doubt.  Defendants have repeatedly claimed that they are in financial straights, especially most recently, in the wake of the current financial crisis.  Given the effect of the current financial crisis on the restaurant industry in New York,[3] Defendants' financial stability is in question.  In addition, Class Counsel reviewed the financial records of the two Individual Defendants, including their tax returns, and has not found evidence that these Defendants have sufficient liquid assets to pay a greater judgment.  Even if Defendants could withstand a greater judgment, a "defendant's ability to

---

[3]      "Restaurants Stop Playing Hard to Get," Frank Bruni, Feb. 4, 2009, The New York Times, available at:  http://www.nytimes.com/2009/02/04/dining/04note.html; "Restaurant Chains Close as Diners Reduce Spending," Michael M. Grynbaum, The New York Times, July 30, 2008, available at:
http://www.nytimes.com/2008/07/30/business/30restaurant.html?emc=eta1; "Putting Capital at the Top of the Menu," Amy Cortese, The New York Times, Feb. 1, 2009, available at:
http://www.nytimes.com/2009/02/01/business/01sqft.html?emc=eta1; "Food Prices Expected to Keep Going Up," Andrew Martin, The New York Times, Nov. 27, 2008, available at:
http://www.nytimes.com/2008/11/27/business/27food.html?emc=eta1

withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178 n.9).   This factor also favors preliminary approval.

### 7. The Settlement Fund is Substantial in Light of the Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9)

The $400,000 settlement amount represents a good value given the attendant risks of litigation, even though recovery could be greater if Plaintiffs succeeded on all claims at trial and survived an appeal.  Each class member will receive a payment based the number of overtime hours he or she worked and the number of events he or she worked for which Defendants charged their customers and retained service charges.  (Ex. C (Stlmt. Agmt.) ¶ 3.4.)  The average per-class member settlement amount before attorneys' fees and service payments is approximately $1,176, plus interest.

Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, the settlement amount is reasonable.  "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."  *Grinnell Corp.*, 495 F.2d at 455 n.2.  "It is well-settled that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair."  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982); *see Cagan v. Anchor Sav. Bank FSB*, No. CV-88-3024, 1990 U.S. Dist. LEXIS 11450, at **34-35 (E.D.N.Y. May 17, 1990) (approving $2.3 million class settlement over objections that the "best possible recovery would be approximately $121 million"); *Brooks v. Am. Export Indus., Inc.*, No. 71 Civ. 5128, 1977 U.S. Dist. LEXIS 17313, at **16-18 (S.D.N.Y. Feb. 17, 1977) (approving settlement of less than 1% of the best possible recovery).  The determination of whether a settlement amount is reasonable "does not involve the use of a

'mathematical equation yielding a particularized sum.'" *Frank*, 228 F.R.D. at 186 (quoting *In re*

*Austrian*, 80 F. Supp. 2d at 178). "Instead, 'there is a range of reasonableness with respect to a

settlement – a range which recognizes the uncertainties of law and fact in any particular case and

the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.*

(quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).

*     *     *

The *Grinnell* factors all weigh in favor of approval. If valid objections arise, the Court

may reevaluate its determination. Because the settlement on its face, is "'fair, adequate, and

reasonable, and not a product of collusion,'" *Frank*, 228 F.R.D. at 184 (quoting *Joel A. v.*

*Giuliani,* 218 F.3d 132, 138-39 (2d Cir. 2000)), the Court should grant preliminary approval.

## II.     Conditional Certification of the Rule 23 Class Is Appropriate

Plaintiffs respectfully request that the Court conditionally certify the following Fed. R.

Civ. P. 23 class for purposes of effectuating the settlement:

> All persons who worked as servers, waiters, bussers, bartenders, captains, and
> front-end sanitation workers for Olivier Cheng Catering and Events, LLC at any
> time between October 10, 2002 and February 11, 2009.

The Court should determine that the proposed settlement class satisfies Rule 23(a)'s

requirements of numerosity, commonality, typicality, and adequacy of representation,

and at least one of the subsections of Rule 23(b), *see Amchem Prods., Inc. v. Windsor*,

521 U.S. 591, 620 (1997); *Hanlon*, 150 F.3d at 1019; *Newberg* § 11:27 (citing *In re Gen.*

*Motors Corp. Pick-up Truck Fuel Tank Prod. Liab. Litig.* ("*In re GMC*"), 55 F.3d 768

(3d Cir. 1995)), and provisionally certify the settlement class, and appoint Plaintiffs'

counsel as class counsel and the Named Plaintiffs as class representatives.

As discussed below, all of the certification requirements for settlement purposes are met

and Defendants consent to provisional certification. (Ex. C (Stlmt. Agmt.) ¶ 2.2.) *See also*

*Newberg* § 11.27 ("When the court has not yet entered a formal order determining that the action may be maintained as a class action, the parties may stipulate that it be maintained as a class action for the purpose of settlement only."); *County of Suffolk v. Long Island Lighting Co.*, 710 F. Supp. 1422, 1424 (E.D.N.Y. 1989) ("It is appropriate for the parties to a class action suit to negotiate a proposed settlement of the action prior to certification of the class."), *aff'd in part, rev'd in part on other grounds*, 907 F.2d 1295 (2d Cir. 1990).

Provisional settlement approval, class certification, and appointment of class counsel have practical purposes, including avoiding the costs of litigating class status while facilitating a global settlement, ensuring notification of all class members of the terms of the proposed Settlement Agreement, and setting the date and time of the final approval hearing. *See In re GMC,* 55 F.3d at 784; *Lenahan v. Sears, Roebuck & Co.*, No. 02-CV-0045, 2006 U.S. Dist. LEXIS 60307, at **18-19 (D.N.J. July 10, 2006) (conditionally certifying multi-state classes and granting preliminary approval to nationwide wage and hour settlement).

Under Rule 23(a), a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b).  Rule 23(a) requires that:

> (1)  the class is so numerous that joinder of all members is impracticable;
>
> (2)  there are questions of law or fact common to the class;
>
> (3)  the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4)  the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  Rule 23(b)(3) requires the court to find that:

> questions of law or fact common to the members of the class predominate over any questions affecting only individual

members, and that a class action is superior to other available
methods for the fair and efficient adjudication of the controversy.

Fed. R. Civ. P. 23(b)(3).

### A. <u>Numerosity</u>

Numerosity is satisfied when the class is "so numerous that joinder of all members is

impracticable." Fed. R. Civ. P. 23(a)(1); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011,

1019 (9th Cir. 1998). "Impracticable does not mean impossible." *Robidoux v. Celani*, 987 F.2d

931, 935 (2d Cir. 1993). "[N]umerosity is presumed at a level of 40 members." *Consol. Rail*

*Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Here, Plaintiffs easily satisfy the

numerosity requirement because there are approximately 340 Class Members. (Neilan Dec.

¶ 19.)

### B. <u>Commonality</u>

The proposed class also satisfies the commonality requirement, the purpose of which is to

test "whether the named plaintiff's claim and the class claims are so interrelated that the interests

of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of*

*Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). Although the claims need not be identical, they

must share common questions of fact or law. *Port Auth. Police Benev. Ass'n, Inc. v. Port Auth.*

*of N.Y. & N.J.*, 698 F.2d 150, 153-54 (2d Cir. 1983); *Savino v. Computer Credit, Inc.*, 173 F.R.D.

346, 352 (E.D.N.Y. 1997), *aff'd in part, rev'd in part on other grounds*, 164 F.3d 81 (2d Cir.

1998). There must be a "unifying thread" among the claims to warrant class certification.

*Kamean v. Local 363, Int'l Bhd. of Teamsters*, 109 F.R.D. 391, 394 (S.D.N.Y. 1986). Courts

construe the commonality requirement liberally. *Frank*, 228 F.R.D. at 181 (citing *Trief v. Dun &*

*Bradstreet Corp.*, 144 F.R.D. 193, 198-99 (S.D.N.Y. 1992)).

This case involves common issues – whether Defendants misappropriated mandatory

service charges and failed to pay proper overtime wages. *See Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 156 (S.D.N.Y. 2008) (commonality satisfied where two questions of law were common to all class members).

### C.     Typicality

Typicality is also met here. "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members." *Frank*, 228 F.R.D. at 182; *Milonas v. Williams*, 691 F.2d 931, 938 (10th Cir. 1982). Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A.*, 126 F.3d at 376 (internal quotations omitted). "Minor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendant directs "the same unlawful conduct" at the named plaintiffs and the class. *Robidoux*, 987 F.2d at 936-37. Courts evaluate typicality "with reference to the company's actions, not with respect to particularized defenses it might have against certain class members." *Trinidad v. Breakaway Courier Sys., Inc.,* 05 Civ. 4116, 2007 U.S. Dist. LEXIS 2914, at *15 (S.D.N.Y. Jan. 12, 2007) (quoting *Wagner v. NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996)).

The Named Plaintiffs' claims arise from the same factual and legal circumstances that form the bases of the Rule 23 Class Members' claims. The Named Plaintiffs had the same principal job duties as the class members. They also suffered the same injuries due to the same policies. *See Lenahan*, 2006 U.S. Dist. LEXIS 60307, at **25-26 ("Here, the same allegedly unlawful conduct affected both the named Plaintiffs and the putative class members . . . . Accordingly, this Court finds the typicality requirement of Rule 23(a)(3) is . . . satisfied."); *Frank*, 228 F.R.D. at 182 (finding that class members satisfied the typicality requirement where

"all class members . . . allege that Kodak failed to pay them . . . overtime wages for hours worked in excess of forty per week during the relevant time period").

### D.  <u>Adequacy of the Named Plaintiffs</u>

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy requirement exists to ensure that the class representatives will 'have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members.'" *Toure v. Cent. Parking Sys.*, No. 05 Civ. 5237, 2007 U.S. Dist. LEXIS 74056, at **18-19 (S.D.N.Y. Sept. 28, 2007) (quoting *Denney v. Deutsche Bank AG,* 443 F.3d 253, 268 (2d Cir. 2006)). "'[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status.'" *Dziennik v. Sealift, Inc.*, No. 05 Civ. 4659, 2007 U.S. Dist. LEXIS 38701, at *19 (E.D.N.Y. May 29, 2007) (quoting *Martens v. Smith Barney Inc.,* 181 F.R.D. 243, 259 (S.D.N.Y. 1998)).

The Named Plaintiffs and the Class Members have no antagonistic interests.

### E.  <u>Certification is Proper Under Rule 23(b)(3)</u>

Rule 23(b)(3) requires that common questions of law or fact not only be present, but "predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. That Plaintiffs easily meet the Rule 23(a) criteria is a strong indicator that Rule 23(b)(3) is satisfied. *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986) (satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality").

Certification under Rule 23(b)(3) will allow class members to opt out of the settlement and preserve their right to seek damages independently. *Cf. Brown v. Title Ticor Ins. Co.*, 982 F.2d 386, 392 (9th Cir. 1992). This approach protects class members' due process rights. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 846-48 (1999).

### 1.     Common Questions Predominate

Predominance requires that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001). The essential inquiry is whether "liability can be determined on a class-wide basis, even when there are some individualized damage issues." *In re Visa Check/MasterMoney Antitrust Litig*, 280 F.3d at 139. Where plaintiffs are "unified by a common legal theory" and by common facts, the predominance requirement is satisfied. *McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005). The predominance requirement "is designed to determine whether 'proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Frank*, 228 F.R.D. at 183 (quoting *Amchem*, 521 U.S. at 623).

Here, all members of the class are unified by common factual allegations – that all class members worked for Defendants as hourly service workers, were not paid a proper overtime premium for hours they worked over forty in a workweek, and were not paid any portion of the mandatory gratuity that Defendants charged their customers. They are also unified by a common legal theory – that Defendants' overtime and tip appropriation policies violate New York law. *See Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 373 (S.D.N.Y. 2007) (the issue of whether employees were supposed to be paid overtime was "about the most perfect question[] for class treatment"); *Torres v. Gristede's Oper. Corp.,* No. 04 Civ. 3316 (PAC), 2006 U.S. Dist.

LEXIS 74039, at *52 (S.D.N.Y. Sept. 28, 2006) (plaintiffs "introduced sufficient proof that Defendants engaged in a common practice to deny employees overtime pay," and "this issue predominates over any individual calculations of overtime wages"); *Lenahan*, 2006 U.S. Dist. LEXIS 60307, at *23 ("a similar legal question: whether the alleged failure to pay [plaintiffs] for all hours worked . . . violated the applicable state wage and hour laws . . . . predominate[s] over any factual variations . . . , such as the length of [plaintiffs'] commute or hourly wage").

The only individualized issues in this case pertain to the calculation of damages. However, individualized damages calculations do not defeat the Rule 23(b)(3) predominance requirement. *See Frank*, 228 F.R.D. at 183 (collecting cases holding that calculation of damages in overtime litigation does not impact the predominance analysis).

### 2. A Class Action is a Superior Mechanism

The second part of the Rule 23(b)(3) analysis is a relative comparison examining whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968). Rule 23(b)(3) sets forth a non-exclusive list of relevant factors, including whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3).[4]

---

[4] Another factor, whether the case would be manageable as a class action at trial, is not of consequence in the context of a proposed settlement. *See Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a [trial] court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial"); *Frank*, 228 F.R.D. at 183 ("The court need not consider the [manageability] factor, however, when the class is being certified solely for the purpose of settlement."). Moreover, denying class certification on manageability grounds is "disfavored" and "should be the exception rather than the rule." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d at 140 (internal quotation marks omitted).

Here, Plaintiffs and the class members have limited financial resources with which to prosecute individual actions, and Plaintiffs are unaware of any individual lawsuits that have been filed by class members arising from the same allegations. Concentrating the litigation in this Court is desirable because the allegedly wrongful conduct occurred within the jurisdiction of this Court.

Employing the class device here will not only achieve economies of scale for putative class members, but will also conserve the resources of the judicial system and preserve public confidence in the integrity of the system by avoiding the expense of repetitive proceedings and preventing inconsistent adjudications of similar issues and claims. *See Hanlon*, 150 F.3d at 1023. A class action is the most suitable mechanism to fairly, adequately, and efficiently resolve the putative settlement class members' claims.

## III.     Plaintiffs' Counsel Should Be Appointed as Class Counsel

Outten & Golden LLP ("O&G") should be appointed as class counsel. Rule 23(g), which governs the standards and framework for appointing class counsel for a certified class, sets fourth four criteria the district court must consider in evaluating the adequacy of proposed counsel: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(C)(i). The Court may also consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(g)(1)(C)(ii). The Advisory Committee has noted that "[n]o single factor should necessarily be determinative in a given case." Fed. R. Civ. P. 23(g) advisory committee's note.

O&G meets all relevant criteria. O&G did substantial work identifying, investigating, prosecuting, and settling Plaintiffs' and the class members' claims; O&G has substantial experience prosecuting and settling employment class actions, including wage and hour class actions; and O&G's lawyers assigned to this matter are well-versed in wage and hour law and in class action law and are well-qualified to represent the interests of the class. (Neilan Dec. ¶¶ 1-13.) Information relevant to each criterion is set forth in the accompanying declaration of Linda A. Neilan. Courts have repeatedly found O&G to be adequate class counsel in wage and hour class actions.[5]

## IV.    The Proposed Class Notice is Appropriate

### A.    The Proposed Class Notice Satisfies Due Process

The content of the Proposed Notice, which is attached to the Proposed Order as Exhibit A, fully complies with due process and Fed. R. Civ. P. 23. Pursuant to Rule 23(c)(2)(B), the notice must provide:

> the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must concisely and clearly state in plain, easily understood language: the nature of the action; the definition of the class certified; the class claims, issues, or defenses;

---

[5]    *See, e.g.,* Neilan Dec. Ex. A (*Mohney v. Shelly's Prime Steak Stone Crab & Oyster Bar*, 06 Civ. 4270 (S.D.N.Y. Dec. 16, 2008); *Damassia*, 250 F.R.D. at 165 (appointing O&G as class counsel on the basis of its "experience[] in handling wage and hour class actions and . . . knowledge of the applicable law"); *Stefaniak v. HSBC Bank USA, N.A.*, No. 05-CV-720, 2008 U.S. Dist. LEXIS 53872, at *8 (W.D.N.Y. June 28, 2008) (O&G "are experienced in prosecuting and settling employment-based class and collective actions, including wage and hour matters," "possess the experience and ability to represent effectively the class's interests," and "[have] adequately represented the class in this action.") (internal brackets and citation omitted); *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2008 U.S. Dist. LEXIS 23016, at *6 (S.D.N.Y. Mar. 24, 2008) ("[O&G] ha[s] substantial experience prosecuting class action cases involving wage and hour claims"); *Torres*, 2006 U.S. Dist. LEXIS 74039, at *49 ("[O&G] is qualified, experienced, and generally able to conduct the [class wage and hour] litigation.") (internal quotations omitted); *Ansoumana v. Gristede's Oper. Corp.*, 201 F.R.D. 81, 87 (S.D.N.Y. 2001) (O&G is "experienced and well-qualified in the fields of labor law and class litigation and, in particular, wage-and-hour class litigation").

that a class member may enter an appearance through counsel if the member so desires; that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and the binding effect of a class judgment on class members under Rule 23(c)(3).

The Proposed Notice here satisfies each of these requirements. It also describes the terms of the settlement, informs the class about the allocation of attorneys' fees, and provides specific information regarding the date, time, and place of the final approval hearing, and how to object or exclude oneself or participate in the settlement. This information is adequate to put class members on notice of the proposed settlement and is well within the requirements of Rule 23(c)(2)(B). Courts have approved class notices even when they provided only general information about a settlement. *See, e.g., In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (class notice "need only describe the terms of the settlement generally").

### B.    The Notice Plan and Award Distribution Process Are Appropriate

The Settlement Agreement provides that notice will be mailed individually by the Claims Administrator to the last known address of each class member within 15 days of the Court's grant of preliminary approval. (Ex. C (Stlmt. Agmt.) ¶ 2.3(B).) The Claims Administrator will trace all returned undeliverable notices and re-send to the most recent addresses available. (*Id.* ¶ 2.3(B).)

Class members will have 30 days from the date of mailing to submit opt-out requests or to comment on or object to the settlement. (*Id.* ¶¶ 2.3, 2.4.) Within 5 days of final approval of the settlement or, if there is an appeal of the grant of final approval, within 5 days after all appeals are resolved in favor of final approval, the Claims Administrator will send class members their payments. (*Id.* ¶ 3.1(D).)

### V.    Plaintiffs Will Seek Approval of the FLSA Settlement

Because Plaintiffs' FLSA claims are distinct from the state wage and hour law claims

they bring under Rule 23, Plaintiffs will seek approval of the settlement of the FLSA overtime claims separately. The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement. *See McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984) (explaining that FLSA collective actions do not implicate the same due process concerns as Rule 23 actions because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date"). When Plaintiffs file their Motion for Final Approval of the Settlement, they will seek approval of the FLSA settlement.

## **CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their Motion for Preliminary Approval of Settlement, Certification of the Settlement Class, Appointment of Plaintiffs' Counsel as Class Counsel, and Approval of the Proposed Notice of Settlement, and enter the Proposed Order.

Dated: March 31, 2009
     New York, New York

                              Respectfully submitted,
                              **OUTTEN & GOLDEN LLP**
                              By:

                               /s/ Linda A. Neilan
                              Linda A. Neilan (LN 4095)

                              **OUTTEN & GOLDEN LLP**
                              Justin M. Swartz (JS 7989)
                              Linda A. Neilan (LN 4095)
                              Rachel M. Bien (RB 6919)
                              3 Park Avenue, 29th Floor
                              New York, New York 10016
                              Telephone: (212) 245-1000