**OUTTEN & GOLDEN LLP**
Justin M. Swartz (JS 7989)
Rachel M. Bien (RB 6919)
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: (212) 245-1000

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **MICHAEL McMAHON and RUSLAN RUDENOK**, on behalf of themselves and all others similarly situated,<br><br>        **Plaintiffs,**<br><br>    **-against-**<br><br>**OLIVIER CHENG CATERING AND EVENTS, LLC, OLIVIER CHENG, and FRANCK CURSAT,**<br><br>        **Defendants.** | **08 Civ. 8713 (PGG)** |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF ATTORNEYS' FEES**
**AND REIMBURSEMENT OF EXPENSES**

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ............................................................................................1

II.   CLASS COUNSEL ARE ENTITLED TO A REASONABLE FEE OF THIRTY-THREE
      PERCENT OF THE SETTLEMENT FUND ...........................................................2

      A.   THE PERCENTAGE METHOD IS THE PREFERRED METHOD IN THE SECOND
           CIRCUIT FOR AWARDING ATTORNEYS' FEES IN A COMMON FUND CASE  .2

      B.   THE *GOLDBERGER* FACTORS SUPPORT AN AWARD OF 33% OF THE FUND ..6

           1.   Class Counsel's Time and Labor ...........................................................6

           2.   Magnitude and Complexity of the Litigation.........................................8

           3.   Risk of Litigation  ..............................................................................10

           4.   Quality of Representation ...................................................................11

           5.   Fee in Relation to the Settlement .......................................................13

           6.   Public Policy Considerations ..............................................................14

III.  THE LODESTAR CROSS CHECK FURTHER SUPPORTS AN AWARD TO CLASS
      COUNSEL OF THIRTY-THREE PERCENT OF THE SETTLEMENT
      FUND .........................................................................................................16

IV.   CLASS COUNSEL IS ENTITLED TO REIMBURSEMENT OF EXPENSES UNDER
      THE SETTLEMENT AGREEMENT ...................................................................17

V.    CONCLUSION .............................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*A.H. Phillips v. Walling,*
    324 U.S. 490 (1945)....................................................................................................15

*In re Am. Bank Note Holographics,*
    127 F. Supp. 2d 418 (S.D.N.Y. 2001)........................................................................4

*Ansoumana v. Gristede's Operating Corp,*
    201 F.R.D. 81 (S.D.N.Y. 2001) ..................................................................................9

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.,*
    No. 02 Civ. 5575, 2006 U.S. Dist. LEXIS 78101 (S.D.N.Y. Sept. 28, 2006) ...........4

*Arbor Hill Concerned Citizens Neighborhood Assoc. v. County of Albany,*
    493 F.3d 110 (2d Cir. 2007)....................................................................................5, 6

*Banyai v. Mazur,*
    No. 00 Civ. 9806, 2007 U.S. Dist. LEXIS 25272 (S.D.N.Y. Mar. 30, 2007)............5

*Barrentine v. Arkansas-Best Freight Sys., Inc.,*
    450 U.S. 728 (1981)....................................................................................................8

*In re Boesky Sec. Litig.,*
    888 F. Supp. 551 (S.D.N.Y. 1995)...........................................................................16

*City of Detroit v. Grinnell Corp.,*
    495 F.2d 448 (2d Cir. 1974)......................................................................................10

*Clark v. Ecolab,*
    No. 07 Civ. 8623, 2009 U.S. Dist. LEXIS 108736 (S.D.N.Y. Nov. 17, 2009) .......12

*Cohen v. Apache Corp.,*
    No. 89 Civ. 0076, 1993 U.S. Dist. LEXIS 5211 (S.D.N.Y. Apr. 21, 1993)............14

*In re Cont'l Ill. Sec. Litig.,*
    962 F.2d 566 (7th Cir. 1992) ......................................................................................5

*Damassia v. Duane Reade, Inc.,*
    No. 04 Civ. 8819, No. 04 Civ. 2295, 2009 U.S. Dist. LEXIS 77489 (S.D.N.Y. July
    24, 2009) ...................................................................................................................12

*Deposit Guar. Nat'l Bank v. Roper,*
    445 U.S. 326 (1980)...............................................................................................2, 15

*Dolgow v. Anderson*,
    43 F.R.D. 472 (E.D.N.Y. 1968) .................................................................................15

*Duchene v. Michael Cetta, Inc.*,
    06 Civ. 4576, 2009 U.S. Dist. LEXIS 85955 (S.D.N.Y. Sept. 10, 2009) ................................14

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
    No. 05 Civ. 10240, 2007 U.S. Dist. LEXIS 57918 (S.D.N.Y. July 27, 2007)..........................5

*Frank v. Eastman Kodak Co.*,
    228 F.R.D. 174 (W.D.N.Y. 2005)................................................................................. passim

*In re Gilat Satellite Networks, Ltd.*,
    No. 02 Civ. 1510, 2007 U.S. Dist. LEXIS 68964 (E.D.N.Y. Sept. 18, 2007).........................13

*Gilliam v. Addicts Rehab. Ctr. Fund*,
    05 Civ. 3452, 2008 U.S. Dist. LEXIS 23016 (S.D.N.Y. Mar. 24, 2008) ................................14

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) .......................................................................................6, 11

*Goldberger v. Integrated Res. Inc.*,
    209 F.3d 43 (2d Cir. 2000)........................................................................................ passim

*Hicks v. Morgan Stanley*,
    No. 01 Civ. 10071, 2005 U.S. Dist. LEXIS 24890 (S.D.N.Y. Oct. 19, 2005) .................14, 16

*In re Indep. Energy Holdings PLC Sec. Litig.*,
    302 F. Supp. 2d 180 (S.D.N.Y. 2003).................................................................................17

*In re Indep. Energy Holdings PLC Sec. Litig.*,
    No. 00 Civ. 6689, 2003 U.S. Dist. LEXIS 17090 (S.D.N.Y. Sept. 29, 2003) ........................13

*J.I. Case Co. v. Borak*,
    377 U.S. 426 (1964)..........................................................................................................15

*Karpus v. Borelli (In re Interpublic Sec. Litig.)*,
    No. 03 Civ. 1194, 2004 U.S. Dist. LEXIS 21429 (S.D.N.Y. Oct. 26, 2004) ...........................5

*Khait v. Whirlpool Corp.*,
    No. 06-6381 (ALC), 2010 U.S. Dist. LEXIS 4067 (E.D.N.Y. Jan. 20, 2010) ............... passim

*In re Lloyd's Am. Trust Fund Litig.*,
    96 Civ. 1262, 2002 U.S Dist. LEXIS 22663 (S.D.N.Y. Nov. 26, 2002) ............................1, 16

*Maley v. Global Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002).........................................................................4, 14, 16

*Miltland Raleigh-Durham v. Myers*,
    840 F. Supp. 235 (S.D.N.Y. 1993)........................................................................................17

*Mohney v. Shelly's Prime Steak*,
    06 Civ. 4270, 2009 U.S. Dist. LEXIS 27899 (S.D.N.Y. Mar. 31, 2009) .......................3, 9, 14

*In re NASDAQ Market-Makers Antitrust Litig.*,
    187 F.R.D. 465 (S.D.N.Y. 1998) ..................................................................................3, 16

*In re Polaroid ERISA Litig.*,
    No. 03 Civ. 8335, 2007 U.S. Dist. LEXIS 51983 (S.D.N.Y. July 19, 2007)........................4, 5

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985)........................................................................................................15

*Prasker v. Asia Five Eight LLC*,
    08 Civ. 5811 (MGC), 2010 U.S. Dist. LEXIS 1445 (S.D.N.Y. Jan. 6, 2010).......12, 14, 15, 16

*In re Prudential Sec. Inc. Ltd. P'ship Litig.*,
    912 F. Supp. 97 (S.D.N.Y. 1996)........................................................................................8

*Rabin v. Concord Assets Group, Inc.*,
    No. 89 Civ. 6130, 1991 U.S. Dist. LEXIS 18273 (S.D.N.Y. Dec. 19, 1991)........................16

*In re Ramp Corp. Sec. Litig.*,
    No. 05 Civ. 6521, 2008 U.S. Dist. LEXIS 213 (S.D.N.Y. Jan. 4, 2008)............................4, 5

*Reyes v. Buddha-Bar NYC*,
    No. 08 Civ. 2494, 2009 U.S. Dist. LEXIS 45277 (S.D.N.Y. May 28, 2009)............3, 9, 12, 14

*In re RJR Nabisco, Inc. Sec. Litig.*,
    No. 88 Civ. 7905, 1992 U.S. Dist. LEXIS 12702 (S.D.N.Y. Aug. 24, 1992) ..................16, 17

*Samiento v. World Yacht Inc.*,
    10 N.Y.3d 70 (2008) ........................................................................................................9

*Sand v. Greenberg*,
    08 Civ. 7840 (PAC), 2010 U.S. Dist. LEXIS 1120 (S.D.N.Y. Jan. 7, 2010) ...............3, 15, 16

*Savoie v. Merchs. Bank*,
    166 F.3d 456 (2d Cir. 1999)........................................................................................5, 16

*Stefaniak v. HSBC Bank USA, N.A.*,
    No. 05 Civ. 720, 2008 U.S. Dist. LEXIS 53872 (W.D.N.Y. June 28, 2008) .........................14

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
    258 F. Supp. 2d 254 (S.D.N.Y. 2003)................................................................................3, 4

*In re Sumitomo Copper Litig.*,
    74 F. Supp. 2d 393 (S.D.N.Y. 1999)...................................................................4, 15

*Swedish Hosp. Corp. v. Shalala*,
    1 F.3d 1261 (D.C. Cir. 1993) ..............................................................................4

*Taft v. Ackermans*,
    No. 02 Civ. 7951, 2007 U.S. Dist. LEXIS 9144 (S.D.N.Y. Jan. 31, 2007)............................11

*Varljen v. H.J. Meyers & Co.*,
    No. 97 Civ. 6742, 2000 U.S. Dist. LEXIS 16205 (S.D.N.Y. Nov. 6, 2000) ............................6

*Velez v. Majik Cleaning Serv., Inc.*,
    No. 03 Civ. 8698, 2007 U.S. Dist. LEXIS 46223 (S.D.N.Y. June 22, 2007).................4, 5, 13

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005)..............................................................................3, 4, 5

*Westerfield v. Washington Mut. Bank*,
    Nos. 06-CV-2817, 08 Civ. 00287, 2009 U.S. Dist. LEXIS 94544 (E.D.N.Y. Oct. 8,
    2009) .................................................................................................3, 12, 14

**STATUTES**

29 U.S.C. § 216(b) ..............................................................................................9

**RULES**

Federal Rule of Civil Procedure 23 ..............................................................................8

## I.   <u>INTRODUCTION</u>

In connection with Plaintiffs' Motion for Certification of the Settlement Class and Final Approval of the Class Action Settlement ("Motion for Final Approval"), filed simultaneously with this motion,[1] Court-appointed Class Counsel, Outten & Golden LLP ("O&G"), respectfully move this Court for an award of attorneys' fees in the amount of thirty-three percent (33%) of the Settlement Fund (the "Fund") and reimbursement of the $6054.12 in out-of-pocket expenses that Class Counsel incurred in successfully prosecuting the claims in this action.

Over the past fifteen months, Class Counsel has spent more than 303 attorney and paralegal hours prosecuting this case.  (Declaration of Rachel Bien in Support of Plaintiffs' Unopposed Motion for Approval of Attorneys' Fees and Reimbursement of Expenses and Unopposed Motion for Service Awards ("Bien Decl.") ¶ 5.)  Multiplied by each attorney's and paralegal's hourly rate, this results in a lodestar amount of approximately $93,943.50.  (*Id*. ¶ 8.) Class Counsel's request for thirty-three percent of the Fund is approximately 1.4 times "lodestar," less than what Courts have awarded in similar cases.  (*Id*.)  Courts routinely award counsel two to three times lodestar in class action settlements.  (*Id*.)  *See, e.g., In re Lloyd's Am. Trust Fund Litig.*, 96 Civ. 1262, 2002 U.S Dist. LEXIS 22663, at *78-79 (S.D.N.Y. Nov. 26, 2002) (a "multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within the Second Circuit").

Class Counsel's efforts to date have been without compensation, and their entitlement to be paid has been wholly contingent upon achieving a good result.  (*Id*. ¶¶ 12-13.)  For the reasons set forth below, Class Counsel respectfully submit that the attorneys' fees and expense

---

[1]     For a detailed account of the factual and procedural background of this case, including settlement negotiations and administration, Class Counsel refer the Court to the Memorandum of Law in Support of Plaintiffs' Motion for Final Approval and the supporting Declaration of Justin M. Bien.

reimbursements are fair and reasonable under the applicable legal standards, and, in light of the

contingency risk undertaken and the result achieved, should be awarded.

## II.   CLASS COUNSEL ARE ENTITLED TO A REASONABLE FEE OF THIRTY-THREE PERCENT OF THE SETTLEMENT FUND

Class Counsel are entitled to reasonable attorneys' fees to compensate them for their

work in recovering misappropriated gratuities and overtime pay on behalf of the Class.  The

Settlement Agreement, which has been preliminarily approved by the Court, provides that "Class

Counsel shall petition the Court for no more than 33% of the Settlement Payment as an award of

attorneys' fees . . . [and] seek reimbursement of reasonable litigation costs and expenses . . . ,

which shall not exceed \$15,000." (Ex. D[2] (Settlement Agreement) ¶ 3.2(A).)  In addition, the

Notice of Settlement of Class Action Lawsuit and Fairness Hearing ("Notice") that was sent to

all Class Members stated the following:

> Class Counsel will ask the Court to approve payment of up to \$133,333 (33 1/3%
> of the settlement fund established by Defendants) to them for attorneys' fees plus
> expenses.  The fees would pay Class Counsel for investigating the facts, litigating
> the case, and negotiating the settlement.

(Ex. F (Notice) ¶ 16.)  This request for thirty-three percent of the Fund plus expenses is

reasonable and well within the range approved by courts in similar cases.

### A.   The Percentage Method is the Preferred Method in the Second Circuit for Awarding Attorneys' Fees in Common Fund Cases

In wage and hour class action lawsuits, public policy favors a common fund attorneys'

fee award.  *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 189 (W.D.N.Y. 2005).  Where

relatively small claims can only be prosecuted through aggregate litigation, and the law relies on

prosecution by "private attorneys general," *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326,

338-39 (1980), attorneys who fill the private attorney general role must be adequately

---

[2]      All exhibits are attached to the Bien Decl.

compensated for their efforts. *Khait v. Whirlpool Corp.*, No. 06-6381 (ALC), 2010 U.S. Dist. LEXIS 4067, at *22-23 (E.D.N.Y. Jan. 20, 2010); *Sand v. Greenberg*, 08 Civ. 7840 (PAC), 2010 U.S. Dist. LEXIS 1120, at *9 (S.D.N.Y. Jan. 7, 2010) (statutory attorneys' fees are meant to "encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel"). If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk. *Khait*, 2010 U.S. Dist. LEXIS 4067, at *22-23 (citing *Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 51 (2d Cir. 2000)); *Sand*, 2010 U.S. Dist. LEXIS 1120, at *9 ("But for the separate provision of legal fees, many violations of the Fair Labor Standards Act would continue unabated and uncorrected.")

Although there are two ways to compensate attorneys for successful prosecution of statutory claims – the lodestar method and the percentage of the fund method – courts in this Circuit prefer the percentage of the fund method in common fund cases like this one. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 122 (2d Cir. 2005) ("The trend in this Circuit is toward the percentage method . . . ."); *Khait*, 2010 U.S. Dist. LEXIS 4067, at *22 (following the "trend" and awarding 33% of the fund); *Westerfield v. Washington Mut. Bank*, Nos. 06-CV-2817, 08 Civ. 00287, 2009 U.S. Dist. LEXIS 94544, at *13-14 (E.D.N.Y. Oct. 8, 2009) (same); *Reyes v. Buddha-Bar NYC*, No. 08 Civ. 2494, 2009 U.S. Dist. LEXIS 45277, at *11-12 (S.D.N.Y. May 28, 2009) (same); *Mohney v. Shelly's Prime Steak*, 06 Civ. 4270, 2009 U.S. Dist. LEXIS 27899, at *16-17 (S.D.N.Y. Mar. 31, 2009) (same); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261-62 (S.D.N.Y. 2003) (collecting cases adopting the percentage of the fund method); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 483-85 (S.D.N.Y. 1998) (same). "Although the Second Circuit has vested the lower circuits

with the option of using either the percentage or lodestar method, every significant Southern District opinion facing the issue since *Goldberger* has embraced the percentage approach . . ." *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, No. 02 Civ. 5575, 2006 U.S. Dist. LEXIS 78101, at *24 (S.D.N.Y. Sept. 28, 2006) (citations omitted).[3]

There are several reasons that courts prefer the percentage method.  First, the percentage method "directly aligns the interests of the class and its counsel" because it provides an incentive to attorneys to resolve the case efficiently and to create the largest common fund out of which payments to the class can be made.  *Wal-Mart Stores*, 396 F.3d at 122; *Goldberger*, 209 F.3d at 47-50; *In re Ramp Corp. Sec. Litig.*, No. 05 Civ. 6521, 2008 U.S. Dist. LEXIS 213, at *8 (S.D.N.Y. Jan. 4, 2008); *In re Polaroid ERISA Litig.*, No. 03 Civ. 8335, 2007 U.S. Dist. LEXIS 51983, at *6 (S.D.N.Y. July 19, 2007); *Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 U.S. Dist. LEXIS 46223, at *24 (S.D.N.Y. June 22, 2007).

The percentage method is also closely aligned with market practices because it "mimics the compensation system actually used by individual clients to compensate their attorneys."  *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 397 (S.D.N.Y. 1999); *Strougo*, 258 F. Supp. 2d at 262 (the percentage method "is consistent with and, indeed, is intended to mirror, practice in the private marketplace where contingent fee attorneys typically negotiate percentage fee arrangements with their clients"); *In re Am. Bank Note Holographics*, 127 F. Supp. 2d 418, 432 (S.D.N.Y. 2001) (the court should "determine what the lawyer would receive if he were selling

---

[3]     A majority of courts in other circuits have also approved and favored the percentage method in common fund cases.  *See Maley v. Global Techs. Corp.*, 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002) ("[T]here is a strong consensus – both in this Circuit and across the country – in favor of awarding attorneys' fees in common fund cases as a percentage of the recovery."); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1271 (D.C. Cir. 1993) ("[W]e join the Third Circuit Task Force and the Eleventh Circuit, among others, in concluding that a percentage-of-the-fund method is the appropriate mechanism for determining the attorney fees award in common fund cases.").

his services in the market rather than being paid by court order") (citing *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 568 (7th Cir. 1992)).  This rationale is consistent with the Second Circuit's decision in *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*, where the Court held that a "presumptively reasonable fee" takes into account what a "reasonable, paying client" would pay.  493 F.3d 110, 111-12 (2d Cir. 2007).  While *Arbor Hill* is not controlling because it does not address a common fund fee petition, it supports use of the percentage of the fund method.  *Khait*, 2010 U.S. Dist. LEXIS 4067 at *24-25.

Second, the percentage of the fund method promotes early resolution.  It "provides a powerful incentive for the efficient prosecution and early resolution of the litigation." *Wal-Mart Stores*, 396 F.3d at 122; *see also In re Ramp Corp. Sec. Litig.*, 2008 U.S. Dist. LEXIS 213 at *8; *In re Polaroid ERISA Litig.*, 2007 U.S. Dist. LEXIS 51983, at *6; *Velez*, 2007 U.S. Dist. LEXIS 46223, at *24.  The percentage method discourages plaintiffs' lawyers from running up their billable hours, one of the most significant downsides of the lodestar method.  *Karpus v. Borelli (In re Interpublic Sec. Litig.)*, No. 03 Civ. 1194, 2004 U.S. Dist. LEXIS 21429, at *32 (S.D.N.Y. Oct. 26, 2004).

Third, the percentage method preserves judicial resources because it "relieves the court of the cumbersome, enervating, and often surrealistic process of evaluating fee petitions." *Id.* (quoting *Savoie v. Merchs. Bank*, 166 F.3d 456, 461 n.4 (2d Cir. 1999)).  The "primary source of dissatisfaction [with the lodestar method] was that it resurrected the ghost of Ebenezer Scrooge, compelling district courts to engage in a gimlet-eyed review of line-item fee audits."  209 F.3d at 48-49; *see also In re Ramp Corp. Sec. Litig.*, 2008 U.S. Dist. LEXIS 213 at *8 n.2; *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 U.S. Dist. LEXIS 57918, at *49 (S.D.N.Y. July 27, 2007); *Banyai v. Mazur*, No. 00 Civ. 9806, 2007 U.S. Dist. LEXIS

25272, at *11 (S.D.N.Y. Mar. 30, 2007).  While courts still use the lodestar method as a "cross check" when applying the percentage of the fund method, courts are not required to scrutinize the fee records as rigorously.  *Goldberger*, 209 F.3d at 50; *see, e.g., In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004) (using an "implied lodestar" for the lodestar cross check); *Varljen v. H.J. Meyers & Co.*, No. 97 Civ. 6742, 2000 U.S. Dist. LEXIS 16205, at *15 (S.D.N.Y. Nov. 6, 2000) (using an "unexamined lodestar figure" for the lodestar cross check).

### B.      The *Goldberger* Factors Support An Award of 33% of the Fund

Reasonableness is the touchstone for determining attorneys' fees.  In *Goldberger*, the Second Circuit articulated six factors for courts to consider in determining the reasonableness of fee applications:

> (1)      the time and labor expended by counsel;
>
> (2)      the magnitude and complexities of the litigation;
>
> (3)      the risk of litigation;
>
> (4)      the quality of representation;
>
> (5)      the requested fee in relation to the settlement; and
>
> (6)      public policy considerations.

209 F.3d at 50 (quotations omitted).  All of the *Goldberger* factors weigh in favor of granting approval of Class Counsel's fee application.

### 1.      Class Counsel's Time and Labor

Class Counsel spent significant effort to achieve the $400,000 settlement and the meaningful injunctive relief.  Class Counsel obtained, reviewed, and analyzed over hundreds of pages of hard-copy documents and electronically stored data including, but not limited to: event invoices specifying the mandatory service charge that Defendants' customers paid and the terms

of such agreements; records showing the total amount of service charges that Defendants collected during the class period; and payroll records reflecting the hours that Plaintiffs and class members worked and their pay.  (Bien Decl. ¶ 19.)

In addition to electronic and paper discovery, Class Counsel interviewed several current and former employees of Defendants who held various positions to obtain factual information as part of their investigation of the claims and in preparation for mediation.  (*Id.* ¶ 18.)

Class Counsel also prepared for and attended two full days of mediation on January 27, 2009 and February 11, 2009.  (*Id.* ¶ 21.)  After the parties reached a preliminary agreement on the terms of settlement, Class Counsel engaged in another six weeks of negotiation to achieve the final Settlement Agreement.  (*Id.* ¶ 22.)

After the Court granted preliminary approval of the settlement and notice was mailed, Class Counsel responded to telephone calls and emails from class members requesting further information regarding the terms of the settlement and the amount of their settlement award.  (*Id.* ¶¶ 10, 30.)  Class Counsel also prepared motions for preliminary and final approval of the settlement and submitted a supplemental declaration to the Court in response to its July 7, 2009 Order.  (*Id.* ¶¶ 24-26.)

In performing these tasks, Class Counsel expended more than 303 hours of attorney and paralegal time – an aggregate lodestar of $93,943.50.  (*Id.* ¶¶ 5, 8.)  These hours are reasonable for a case like this one and were compiled from contemporaneous time records maintained by each attorney, paralegal, and support staff participating in the case.  (*Id.* ¶ 7.)

Class Counsel used a small team of attorneys and staff at any one time in order to minimize duplication of efforts and maximize billing judgment.  (*Id.* ¶ 6.)  Class Counsel made

every effort to have work performed by the attorney or paralegal with the lowest hourly rate who was able to effectively perform it.  (*Id*.)

Moreover, the requested fee is not based solely on time and effort already expended, rather, it is also meant to compensate Class Counsel for time that Class Counsel will be required to spend administering the settlement in the future.  (*Id.* ¶ 10.)  *See Khait*, 2010 U.S. Dist. LEXIS 4067, at *25 ("The fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward also supports their fee request" of 33% of the fund).  In Class Counsel's experience, administering class settlements of this nature and size requires a substantial and ongoing commitment.  (Bien Decl. ¶ 10.)  For example, since the Notice was sent out, Class Counsel and staff have responded to class members' questions about the settlement and will continue to do so as the settlement administration continues.  (*Id*.)

## 2.    <u>Magnitude and Complexity of the Litigation</u>

The size and difficulty of the issues in a case are significant factors to be considered in making a fee award.  *Goldberger*, 209 F.3d at 50; *In re Prudential Sec. Inc. Ltd. P'ship Litig.*, 912 F. Supp. 97, 100 (S.D.N.Y. 1996).  Courts have recognized that wage and hour cases involve complex legal issues: "FLSA claims typically involve complex mixed questions of fact and law . . . . These statutory questions must be resolved in light of volumes of legislative history and over four decades of legal interpretation and administrative rulings."  *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981).

Among FLSA cases, the most complex type is the "hybrid" action brought here, where state wage and hour violations are brought as ("opt out") class actions pursuant to Federal Rule of Civil Procedure 23, in the same action as the FLSA collective action ("opt in") mechanism

pursuant to 29 U.S.C. § 216(b).  Because the same set of operative facts are being applied and analyzed similarly under both statutory frameworks, justice is served by having the litigation in one forum for consistency and efficiency.  *See Ansoumana v. Gristede's Operating Corp,* 201 F.R.D. 81, 89 (S.D.N.Y. 2001).

Plaintiffs' tip misappropriation claim hinged on a complicated mixed question of fact and law – whether Defendants should have distributed mandatory service charges paid by their event customers to the employees who worked the events.  The fact questions included whether Defendants' customers believed that the service charges were gratuities for the service staff and whether Defendants represented that the service charge was in fact a gratuity.  The legal questions include whether the mandatory service charge constitutes a "gratuity" within the meaning of Section 196-d of the NYLL and, if they do, whether Defendants are only liable for the period after the Court decided *Samiento v. World Yacht Inc*., 10 N.Y.3d 70 (2008), the case in which the New York Court of Appeals held that a mandatory service charge could be a "gratuity" under certain circumstances.  Plaintiffs and Defendants also disputed whether Defendants willfully failed to pay class members overtime for the hours that they worked over forty in a workweek.

This factor supports approving Class Counsel's attorneys' fee request.  *See Frank*, 228 F.R.D. at 189 (mixed questions of fact and law supported court's award of attorneys' fees representing 38% of the common fund); *see also Reyes*, 2009 U.S. Dist. LEXIS 45277, at *11-14 (awarding O&G attorneys' fees of 33% of the common fund in a case involving tip and mandatory gratuity misappropriation); *Mohney*, 2009 U.S. Dist. LEXIS 27899 at *16 (same in suit involving misappropriated tips, unpaid overtime and other wages).

3.      **Risk of Litigation**

The risk of litigation is also an important factor in determining a fee award.  Uncertainty that an ultimate recovery will be obtained is highly relevant in determining the reasonableness of an award.  *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 470 (2d Cir. 1974).  "[D]espite the most rigorous and competent of efforts, success is never guaranteed."  *Id.* at 471.

Class Counsel undertook to prosecute this action without any assurance of payment for their services, litigating this case on a wholly contingent basis in the face of tremendous risk. (Bien Decl. ¶ 12.)  Class and collective wage and hour cases of this type are, by their very nature, complicated and time-consuming.  (*Id.*)  Any lawyer undertaking representation of large numbers of affected employees in such actions inevitably must be prepared to make a tremendous investment of time, energy, and resources.  (*Id.*)  Due also to the contingent nature of the customary fee arrangement, lawyers are asked to be prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind.  (*Id.*)  Class Counsel stood to gain nothing in the event the case was unsuccessful.  (*Id.*)

Moreover, the circumstances of this case presented hurdles to a successful recovery of unpaid wages.  (*Id.* ¶ 14.)  In order to prevail on their misappropriated tip claim, Plaintiffs would be required to prove that Defendants' customers believed that the service charges were in fact gratuities meant for the workers who staffed the events and not for other non-food and beverage employees who helped to coordinate the events.  (*Id.*)  As discussed in the Supplemental Declaration of Linda A. Neilan, submitted to the Court on July 27, 2009,[4] some facts presented

---

[4]     Plaintiffs requested, and the Court approved, in camera submission of portions of the supplemental declaration, including the portions regarding evidence presented by Defendants at the mediation and Plaintiffs' counsel's analysis of the impact of that evidence if litigation had proceeded.

by Defendants at the mediations raised concern regarding whether Plaintiffs would be able to make their showing.

In addition to the risk of prevailing on the merits and the risk that the Court would not certify the Class, Class Counsel faced the possibility that Defendants' business would not survive the current economic downturn.  (Bien Decl. ¶ 15.)  During the parties' mediation sessions, Defendants asserted that their business had been seriously affected by the slumping economy and that they would likely declare bankruptcy if Plaintiffs prevailed at trial on 100% of their claims. (*Id.*)  To verify Defendants' assertions, Plaintiffs requested and obtained financial records, including tax returns of the individual defendants, Olivier Cheng and Franck G. Cursat, and the corporate defendant, Olivier Cheng Catering & Events, LLC; profit and loss statements for Olivier Cheng Catering & Events for years 2007 and 2008; bank statements for Mr. Cheng and Mr. Cursat dated January 29, 2009; and Mr. Cursat's mortgage account statement dated January 6, 2009.[5]  (*Id.*)  The documents confirmed that Defendants did not have sufficient resources to withstand a greater judgment.  Accordingly, the risk of litigation and collection weigh in favor of Class Counsel's request for attorneys' fees.

### 4.    Quality of Representation

"To determine the 'quality of the representation,' courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit."  *Taft v. Ackermans*, No. 02 Civ. 7951, 2007 U.S. Dist. LEXIS 9144, at *31 (S.D.N.Y. Jan. 31, 2007) (citing *In re Global Crossing*, 225 F.R.D. at 467).

Defendants agreed to pay a total of $400,000 to settle this litigation.  Each Class Member who has not opted out will receive a payment based the number of overtime hours he or she

---

[5]    The financial records are attached as Exhibit B to the Supplemental Declaration of Linda A. Neilan.

worked and the number of catered events he or she worked for which Defendants charged their customers a mandatory service charge.  (Ex. D (Stlmt. Agmt.) ¶ 3.4.)  In addition to monetary relief, Defendants agreed to important injunctive relief, including to pay their employees overtime at the premium rate and to comply with the wage and hour and non-retaliation requirements of the FLSA and NYLL.  (*Id*. ¶ 3.6.)  Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, the settlement is reasonable and the injunctive relief is meaningful.  The settlement amounts will be available to Class Members without the uncertainty and delay of trial.

Class Counsel has substantial experience prosecuting large-scale wage and hour class and collective actions.  *See Khait*, 2010 U.S. Dist. LEXIS 4067, at *21 (O&G lawyers "have substantial experience prosecuting and settling . . . wage and hour class actions[.]"); *Prasker v. Asia Five Eight LLC*, 08 Civ. 5811 (MGC), 2010 U.S. Dist. LEXIS 1445, at *16 (S.D.N.Y. Jan. 6, 2010) (same); *Clark v. Ecolab*, No. 07 Civ. 8623, 2009 U.S. Dist. LEXIS 108736, at *20 (S.D.N.Y. Nov. 17, 2009) (O&G are "skilled and experienced employment class action lawyers . . . [and] have extensive experience prosecuting and settling nationwide wage and hour class and collective actions"); *Westerfield*, 2009 U.S. Dist. LEXIS 94544, at * 12-13 (same); *Damassia v. Duane Reade, Inc.*, No. 04 Civ. 8819, No. 04 Civ. 2295, 2009 U.S. Dist. LEXIS 77489, at *6 (S.D.N.Y. July 24, 2009) (noting that O&G "has substantial experience prosecuting and settling employment class actions, including wage and hour class actions and are well-versed in wage and hour law and in class action law"); *Reyes*, 2009 U.S. Dist. LEXIS 45277 at *7 ("[O&G] 'has an established record of competent and successful prosecution of large wage and hour class actions, and the attorneys working on the case are likewise competent and experienced in the area.'").

Class Counsel's skill and experience was directly responsible for the favorable settlement and weighs in favor of granting the requested fees.  (Bien Decl. ¶ 4.)  *Velez*, 2007 U.S. Dist. LEXIS 46223, at *25 (holding that "Lead Counsel's experience representing plaintiffs in class actions" supported a 33.33% contingency fee award); *Frank*, 228 F.R.D. at 189 (citing plaintiffs' counsel's experience as one factor supporting an attorneys' fee award of 40% of the fund).

**5.      Fee in Relation to the Settlement**

Courts also consider the size of the settlement to ensure that the percentage awarded does not constitute a "windfall."  *See, e.g., In re Gilat Satellite Networks, Ltd.*, No. 02 Civ. 1510, 2007 U.S. Dist. LEXIS 68964, at *23-24 (E.D.N.Y. Sept. 18, 2007).  "[T]he percentage used in calculating any given fee award must follow a sliding-scale and must bear an inverse relationship to the amount of the settlement."  *Id.* (quoting *In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689, 2003 U.S. Dist. LEXIS 17090, at *20 (S.D.N.Y. Sept. 29, 2003)) (internal quotation marks omitted).  Where the size of the fund is relatively small, courts typically find that requests for a greater percentage of the fund are reasonable.  *See, e.g., Frank*, 228 F.R.D. at 189 ("[D]ue to the relatively small settlement involved here [$450,000], the requested fee award [of 40%] is necessary to compensate counsel adequately."); *In re Gilat Satellite Networks, Ltd.*, 2007 U.S. Dist. LEXIS 68964, at *23-24 (finding a 30% fee would not constitute a windfall "given the modest size of the settlement"); *Velez*, 2007 U.S. Dist. LEXIS 4622, at *25 (noting "the relatively small size of settlement fund" in granting a 31% fee award).

The modest size of the $400,000 settlement weighs in favor of granting the requested fee award of 33% of the common fund.  In fact, courts in this Circuit have routinely granted requests of one-third of the fund in cases with settlement funds substantially larger than this one.  *See Khait,* 2010 U.S. Dist. LEXIS 4067, at *21 (awarding class counsel 33% of $9.25 million

13

settlement fund in FLSA and multi-state wage and hour case); *Prasker*, 2010 U.S. Dist. LEXIS

1445, at *17 (awarding class counsel fees of $346,500 out of $1,050,000 settlement fund in

FLSA and NYLL tip misappropriation restaurant case); *Westerfield*, 2009 U.S. Dist. LEXIS

94544, at *4, 13 (awarding 30% of $38,000,000 fund in nationwide overtime suit); *Duchene v.*

*Michael Cetta, Inc.*, 06 Civ. 4576, 2009 U.S. Dist. LEXIS 85955, at *8-9 (S.D.N.Y. Sept. 10,

2009) (awarding class counsel 32.2% of $3,150,000 fund in FLSA and NYLL tip

misappropriation case); *Reyes*, 2009 U.S. Dist. LEXIS 45277, at *2-3, 11 (awarding 33% of

$710,000 fund in FLSA and NYLL tip misappropriation case); *Mohney*, 2009 U.S. Dist. LEXIS

27899, at *13, 16-17 (awarding 33% of $3,265,000 fund in FLSA and NYLL tip

misappropriation case); *Stefaniak v. HSBC Bank USA, N.A.*, No. 05 Civ. 720, 2008 U.S. Dist.

LEXIS 53872, *9 (W.D.N.Y. June 28, 2008) (awarding 33% of $2.9 million fund in FLSA and

NYLL case); *Maley*, 186 F. Supp. 2d at 370 (awarding 33 1/3% fee of fund valued at $11.5

million); *Cohen v. Apache Corp.*, No. 89 Civ. 0076, 1993 U.S. Dist. LEXIS 5211, at *1

(S.D.N.Y. Apr. 21, 1993) (awarding 33 1/3% of the $6.75 million fund).  This is true even

though "[a]s the size of the settlement fund increases, the percentage of the fund awarded as fees

often decreases so as to prevent a windfall to plaintiffs' attorneys."  *Hicks v. Morgan Stanley*,

No. 01 Civ. 10071, 2005 U.S. Dist. LEXIS 24890, at *25 (S.D.N.Y. Oct. 19, 2005) (citation

omitted).  A fee of thirty-three and one-third percent of the Settlement Fund is reasonable and

"consistent with the norms of class litigation in this circuit."  *Gilliam v. Addicts Rehab. Ctr.*

*Fund*, 05 Civ. 3452, 2008 U.S. Dist. LEXIS 23016, at *15 (S.D.N.Y. Mar. 24, 2008).

## 6.     Public Policy Considerations

Public policy considerations weigh in favor of granting Class Counsel's requested fees.

In rendering awards of attorneys' fees, "the Second Circuit and courts in this district also have

taken into account the social and economic value of class actions, and the need to encourage experienced and able counsel to undertake such litigation." *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d at 399.

The FLSA and the NYLL are remedial statutes designed to protect the wages of workers. *See A.H. Phillips v. Walling,* 324 U.S. 490, 493 (1945) (recognizing the FLSA's objective – ensuring that every employee receives "a fair day's pay for a fair day's work.").   Adequate compensation for attorneys who prosecute those rights by taking on such litigation furthers the remedial purpose of those statutes.  *Sand*, 2010 U.S. Dist. LEXIS 1120, at *9 ("But for the separate provision of legal fees, many violations of the Fair Labor Standards Act would continue unabated and uncorrected."); *Prasker*, 2010 U.S. Dist. LEXIS 1445, at *17 ("Attorneys who fill the private attorney general role must be adequately compensated for their efforts.  If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk."); *Khait*, 2010 U.S. Dist. LEXIS 4067, at *22-23 (same).

Courts have recognized that fee awards in cases like this serve the dual purposes of encouraging "private attorneys general" to seek redress for violations and discourage future misconduct of a similar nature.  *See Prasker*, 2010 U.S. Dist. LEXIS 1445, at *17; *Khait*, 2010 U.S. Dist. LEXIS 4067, at *22-23; *Roper*, 445 U.S. at 338-39; *Dolgow v. Anderson*, 43 F.R.D. 472, 487 (E.D.N.Y. 1968), *reversed and remanded on other grounds*, 438 F.2d 825 (2d Cir. 1970).  Class actions are also an invaluable safeguard of public rights.  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985); *J.I. Case Co. v. Borak*, 377 U.S. 426, 433-34 (1964). Particularly where, as here, the settlement fund is relatively small, an award of attorneys' fees ensures that "plaintiffs' claims [will] likely . . . be heard."  *Frank*, 228 F.R.D. at 189.  If courts denied sufficient attorneys' fees "no attorneys . . . would likely be willing to take on . . . small-

scale class actions[.]" *Id.*; *Sand*, 2010 U.S. Dist. LEXIS 1120, at *9; *Prasker*, 2010 U.S. Dist. LEXIS 1445, at *17; *Khait*, 2010 U.S. Dist. LEXIS 4067, at *22-23.

### III.   THE LODESTAR CROSS CHECK FURTHER SUPPORTS AN AWARD TO CLASS COUNSEL OF THIRTY-THREE PERCENT OF THE SETTLEMENT FUND

Following *Goldberger*, the trend in the Second Circuit has been to apply the percentage method and loosely use the lodestar method as a "baseline" or as a "cross check." *Goldberger*, 209 F.3d at 50.  The Second Circuit "encourages the practice of requiring documentation of hours as a 'cross check' on the reasonableness of the requested percentage." *Id.*  As part of the cross check, the lodestar is determined by multiplying the hours reasonably expended on the case by a reasonable hourly rate. *Hicks*, 2005 U.S. Dist. LEXIS 24890, at *27.  Courts then consider whether a multiplier is warranted based on factors, such as: (1) the contingent nature of the expected compensation for services rendered; (2) the consequent risk of non-payment viewed as of the time of filing the suit; (3) the quality of representation; and (4) the results achieved. *In re Boesky Sec. Litig.*, 888 F. Supp. 551, 562 (S.D.N.Y. 1995); *see also Goldberger*, 209 F.3d at 47; *Savoie*, 166 F.3d at 460.

All of these factors support the 1.4 multiplier Class Counsel seeks.  Courts regularly award lodestar multipliers from 2 to 6 times lodestar. *See, e.g., In re Lloyd's Am. Trust Fund Litig.*, 2002 U.S Dist. LEXIS 22663, at *78-79 (a "multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within the Second Circuit"); *Maley*, 186 F. Supp. 2d at 371 (the "modest multiplier of 4.65 is fair and reasonable"); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. at 473 (awarding multiplier of 3.97 times lodestar); *Rabin v. Concord Assets Group, Inc.,* No. 89 Civ. 6130, 1991 U.S. Dist. LEXIS 18273, at *3-4 (S.D.N.Y. Dec. 19, 1991) (awarding multiplier of 4.4); *In re RJR Nabisco, Inc. Sec. Litig.*, No. 88 Civ. 7905, 1992

U.S. Dist. LEXIS 12702, at *19-22 (S.D.N.Y. Aug. 24, 1992) (awarding multiplier of 6).  Here, Class Counsel seeks a lodestar multiplier of approximately 1.4 – well below the lower end of the range typically awarded by courts in this Circuit.  (Bien Decl. ¶ 8.)

In calculating the lodestar for cross check purposes, the "hours documented by counsel need not be exhaustively scrutinized by the district court."  *Goldberger*, 209 F.3d at 50.  Rather, the "reasonableness of the claimed lodestar can be tested by the court's familiarity with the case[.]"  *Id.*  Class Counsel spent more than 303 hours litigating and settling this matter.  (Bien Decl. ¶ 5.)  The time spent by Class Counsel is described in the Declaration of Rachel Bien and Class Counsel's contemporaneous time records attached thereto.  (Bien Decl. ¶¶ 5, 8-9; Exs. A and B (Time Records).)  The hours Class Counsel has worked result in a lodestar of $93,943.50.  If the Court grants this motion, Class Counsel will recover approximately 1.4 times their lodestar fees.

## IV.   CLASS COUNSEL IS ENTITLED TO REIMBURSEMENT OF EXPENSES UNDER THE SETTLEMENT AGREEMENT

Class Counsel requests reimbursement of $6054.12 in out-of-pocket expenses to be paid from the Fund.  "Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation' of those clients."  *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (quoting *Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993)) (internal quotation marks omitted).  Here, Class Counsel's un-reimbursed expenses were incidental and necessary to the representation of the Class.  (Bien Decl. ¶ 5.)  The expenses include one-half of the mediator's fees ($5,365.40), in addition to telephone charges, postage, transportation and working meal costs, photocopies, and electronic research.  (*Id.*)

## V.  <u>CONCLUSION</u>

For the reasons set forth above, Plaintiffs respectfully request that the Court grant

Plaintiffs' Unopposed Motion for Approval of Attorneys' Fees and Reimbursement of Expenses,

and enter an Order: (i) awarding attorneys' fees in the amount of thirty-three percent of the Fund;

and (ii) reimbursing $6054.12 in out-of-pocket expenses that Class Counsel incurred in

successfully prosecuting the claims in this action.


Dated:          February 16, 2010
                New York, New York

                              Respectfully submitted,

                              **OUTTEN & GOLDEN LLP**
                              By:

                              /s/ Rachel Bien
                              Rachel M. Bien (RB 6919)

                              **OUTTEN & GOLDEN LLP**
                              Justin M. Swartz (JS 7989)
                              Rachel M. Bien (RB 6919)
                              3 Park Avenue, 29th Floor
                              New York, New York 10016
                              Telephone:  (212) 245-1000

                              **Attorneys for Plaintiffs and the Class**